

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| NICHOLAS CRISCUOLO, | No. 12-35335 |
| Plaintiff - Appellant, | D.C. No. 2:10-cv-00470-LRS |
| v. | |
| GRANT COUNTY, et al., | MEMORANDUM* |
| Defendants - Appellees, | |
| and | |
| CITY OF MOSES LAKE, | |
| Defendant. | |

Appeal from the United States District Court
for the Eastern District of Washington
Lonny R. Suko, District Judge, Presiding

Argued and Submitted May 10, 2013
Seattle, Washington

Before: HAWKINS and NGUYEN, Circuit Judges, and SELNA, District Judge.**

---

\* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

\*\* The Honorable James V. Selna, District Judge for the U.S. District Court for the Central District of California, sitting by designation.

Nicholas Criscuolo appeals the district court's grant of summary judgment in favor of Grant County Deputy Sheriff Beau Lamens and Grant County in this 42 U.S.C. § 1983 action arising from Lamens's fatal shooting of Criscuolo's dog, Slyder. We have jurisdiction under 28 U.S.C. § 1291. We affirm in part, reverse in part, and remand for further proceedings.

1.    The district court erred in finding at the summary judgment stage that Lamens's killing of Slyder was objectively reasonable under the Fourth Amendment. Lamens intruded on Criscuolo's Fourth Amendment interests by killing Slyder. *San Jose Charter of the Hells Angels Motorcycle Club v. City of San Jose*, 402 F.3d 962, 975 (9th Cir. 2005). Viewing the totality of the circumstances in the light most favorable to Criscuolo, the nonmovant, the killing was not reasonably necessary to protect the safety of Maddox, the police dog.

A reasonable trier of fact could find that Lamens unreasonably shot Slyder after the dogs separated, because Slyder posed no imminent threat to Maddox even though the events occurred rapidly. Criscuolo and other witnesses claim that right before Lamens fired, Slyder was not springing toward Maddox, Slyder was stationary or retreating at a distance of 10–20 feet from Lamens and Maddox, and Criscuolo was one to two feet away and about to leash Slyder.

Such facts, if credited, strengthen Criscuolo's Fourth Amendment interests, and a reasonable jury could conclude that Lamens did not need to make any "split-second decision" to protect Maddox. *See Altman v. City of High Point*, 330 F.3d 194, 207 (4th Cir. 2003) (explaining that private Fourth Amendment interests are "stronger when, although the dog is unleashed, the owner is nearby and attempting to assert control over the dog"); *Viilo v. City of Milwaukee*, 552 F. Supp. 2d 826, 831, 838–42 (E.D. Wis.) (reasoning that the first shots fired at a dog were reasonable, but disputed facts precluded summary judgment as to the third and fourth shots, which were fired ten minutes later, given conflicting testimony as to whether the dog was running toward the officers or whimpering and trying to return to his owner), *appeal dismissed*, *Viilo v. Eyre*, 547 F.3d 707 (7th Cir. 2008). The district court erred in resolving these material facts and making inferences in favor of Lamens.

**2.**     The district court also erred in alternatively finding that Lamens in any event is entitled to qualified immunity. At the time of the events in question, it was well established "that the Fourth Amendment forbids the killing of a person's dog . . . when that destruction is unnecessary—*i.e.*, when less intrusive, or less destructive, alternatives exist." *Hells Angels*, 402 F.3d at 977–78. Viewing the facts in the light most favorable to Criscuolo and assuming Lamens "correctly perceived all of the

3

relevant facts," as we must, *Torres v. City of Madera*, 648 F.3d 1119, 1127 (9th Cir. 2011), this case does not fall within the hazy spectrum between unreasonable and reasonable seizures.

Lamens shot Slyder after he retreated and when Criscuolo was about to obtain custody—not when Slyder was about to attack. It is clearly established that it is unreasonable to shoot an unleashed dog—even if it surprises an officer on public property—if it poses no imminent or obvious threat, its owner is in close proximity and desirous of obtaining custody, and deadly force is avoidable. *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 210–11 (3d Cir. 2001) (explaining that although good reason to believe a pet poses an imminent danger may justify destroying it in the owner's presence, "[t]his does not mean . . . that the state may, consistent with the Fourth Amendment, destroy a pet when it poses no immediate danger and the owner is looking on, obviously desirous of retaining custody"); *Viilo*, 552 F. Supp. 2d at 839–40 (reasoning that deadly force may be unjustified once a dog no longer poses an imminent threat).[1] Accordingly, we reverse the

---

[1] We do not believe the rapidity with which the events occurred sufficiently distinguishes this case from others and renders the law not clearly established. To grant qualified immunity because of the rapidity alone would "effectively wrench of all meaning the Supreme Court's admonition that 'officials can still be on notice that their conduct violates established law'" even in "novel" circumstances. *Torres*, 648 F.3d at 1129 (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)).

district court's entry of judgment as a matter of law in favor of Lamens on his personal liability and remand for further proceedings consistent with this opinion.

**3.**     We affirm the district court's entry of judgment as a matter of law in favor of Grant County on its municipal liability based on policy, inaction, and failure to train. Grant County Sheriff's Office Policy 7.14 provides that animals "who are vicious and/or attacking persons or property may be killed at the discretion of the deputy." The policy's "attacking persons and or property" language, at issue here, does not authorize unconstitutional conduct or give officers unbridled discretion to shoot any animal they encounter, even if it is not threatening. No reasonable jury could find that Lamens's actions "reflected [the] implementation of a generally applicable rule," *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 406 (1997), or attribute fault and causation to Grant County itself. *See Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1185 (9th Cir. 2002) (requiring the plaintiff to show the municipality itself violated his rights or directed employees to do so); *see also Brown*, 520 U.S. at 405 ("[P]roof that a municipality's legislative body or authorized decisionmaker has intentionally deprived a plaintiff of a federally protected right necessarily establishes that the municipality acted culpably."). There also is no evidence that Grant County was "deliberately indifferent"; nothing indicates that Grant County's experiences—such as a pattern of tortious conduct by

5

officers—or judicial precedent should have put it on actual or constructive notice that any inadequacy in its policy or training caused or likely would cause constitutional violations. *See Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1186 (9th Cir. 2006).

**4.** Because we reverse the district court's grant of summary judgment on Criscuolo's Fourth Amendment claim against Lamens, we reinstate Criscuolo's pendent state law claims. *See Sims v. Stanton*, 706 F.3d 954, 959 n.3 (9th Cir. 2013). On remand, the district court is free to revisit whether to dismiss the state claims.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

Each party shall bear its own costs on appeal.